# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| LITTLE ONES PRESCHOOL, INC., individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) Case No.: 2:20-cv-1428 |
| v. | ) ) |
| WEST BEND MUTUAL INSURANCE COMPANY, | ) **JURY TRIAL DEMANDED** ) ) |
| Defendant. | ) ) |

## CLASS ACTION COMPLAINT

Plaintiff Little Ones Preschool, Inc. ("Little Ones"), individually and on behalf of the other members of the below-defined nationwide classes (collectively, the "Class"), bring this class action against Defendant West Bend Mutual Insurance Company ("West Bend"), and in support thereof state the following:

## I.    NATURE OF THE ACTION

1.      Plaintiff Little Ones owns and operates a preschool for ages two through five in Northbrook, Illinois.   Little Ones also offers extended day programs for ages three through five. Little Ones' existence, however, is now threatened by SARS-CoV-2, sometimes called "Coronavirus" or by one of the names of the disease that it causes and that spreads it.  For ease of reference, SARS-CoV-2 will be referred to as "COVID-19" herein.

2.      Plaintiff was forced to suspend or reduce business at its preschool due to COVID-19 (a.k.a. the "coronavirus" or "SARS-CoV-2") and the resultant Closure Orders mandating the closure of businesses like Little Ones for on-site services, as well as in order to take necessary steps to prevent further damage and minimize the suspension of business and continue operations.

1

3.     Moreover, due to COVID-19, Plaintiff's property at Little Ones has suffered direct physical loss and damage under the plain meaning of those words.

4.     The loss is "direct."  Plaintiff does not seek for West Bend to reimburse them after someone obtained a judgment against Plaintiff for getting them or their child sick. That might be an indirect loss. Rather, Little Ones directly lost the functionality of its property for business purposes due to COVID-19. Plaintiff is asking West Bend to pay for its loss of business income occasioned directly by being unable to use its property.[1]

5.     The loss is "physical."  The physical interior space of Plaintiff's property is unable to function in the manner in which it had previously functioned prior to the COVID-19 pandemic. Also, the loss is physical because COVID-19 is transmittable in aerosols and on physical surfaces. The probability of illness prevents the functioning of the physical space in no different of a way than how, on a rainy day, an open roof caused by a tornado would make the interior space of a business unusable.

6.     The loss is a "loss."  Little Ones has lost the use and function of physical space for business purposes.  While its property could once accommodate many, now they can physically only accommodate a few.

7.     The impairment of the business function is also damage to its preschool.  The threat of and presence of COVID-19 on property damages the property as it makes property unsafe.

---

[1] Note, however, that Plaintiff does not seek recovery for its loss of use. Plaintiff seeks coverage for their loss of business income. Here's an example that drives home the difference, some law firms have been unable to use their office space because of COVID-19, but nevertheless the law firms' business income has increased and they thus have faced no loss of business income. A claim by such a law firm for not being able to use its office space would be a "loss of use" claim. The law firm would have no loss of business income claim. Here, Plaintiff's business has decreased because of the impairment of its preschool, and Plaintiff seeks the loss of business income under the business interruption coverage of their property insurance policy.

2

8. Insurers around the country are now wanting federal and state judges to interpret the words "direct physical loss of or damage," but those words need no interpretation. What insurers want is for courts to change the meaning of those terms—instead of just letting a jury apply the facts of the case to these ordinary words and reach a verdict in the same way a jury would reach a verdict if it were called upon to answer whether a person was injured or property was damaged.

9. To protect its business in the event that it suddenly had to suspend operations for reasons outside of its control, or if it had to act in order to prevent further property damage, Plaintiff purchased insurance coverage from West Bend, including special property coverage, as set forth in West Bend's Businessowners Special Property Coverage Form (NS 0203 01 18) ("Special Property Coverage Form").

10. West Bend's Special Property Coverage Form provides "Business Income" coverage, which promises to pay for loss due to the necessary suspension of operations following loss to property.

11. West Bend's Special Property Coverage Form also provides "Civil Authority" coverage, which promises to pay for loss caused by the action of a civil authority that prohibits access to the insured premises.

12. West Bend's Special Property Coverage Form also provides "Extra Expense" coverage, which promises to pay the expense incurred to minimize the suspension of business and to continue operations.

13. West Bend's Special Property Coverage Form also provides "Communicable Disease Business Income and Extra Expense Coverage," which promises to pay, subject to a cap, for any loss or expense incurred from the temporary shutdown or suspension of operations ordered

3

by a "board of health or similar governmental board" "due to an outbreak of a 'communicable disease' or a 'waterborne pathogen' at the insured premises." This coverage begins 24 hours after the jurisdictional board shuts down or suspends operations and continues up to 30 days after the jurisdictional board permits full or partial resumption of operations. In addition to loss of Business Income, this coverage pays for, among other costs, the cost to evacuate the insured premises, to "avoid or minimize the suspension of business," and to "minimize the suspension" of operations if operations cannot be continued.

14. West Bend's Special Property Coverage Form, under a section entitled "Duties in the Event of Loss or Damage" mandates that West Bend's insured "must see that the following are done in the event of loss. . . [t]ake all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim." This is commonly referred to as "Sue and Labor" coverage.

15. Plaintiff was forced to suspend or reduce operations at its preschool due to COVID-19 and the resultant closure orders issued by civil authorities in Michigan and Illinois.

16. Upon information and belief, West Bend has, on a widescale and uniform basis, refused to pay its insureds under its Business Income, Civil Authority, Extra Expense, Communicable Disease Business Income and Extra Expense, and Sue and Labor coverages for losses suffered due to COVID-19, any orders by civil authorities that have required the necessary suspension of business, and any efforts to prevent further property damage or to minimize the suspension of business and continue operations. Indeed, West Bend has denied Plaintiff's claims under its West Bend policies.

4

## II.   JURISDICTION AND VENUE

17.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because Defendant and at least one member of the Class are citizens of different states, and because: (a) the Class consists of at least 100 members; (b) the amount in controversy exceeds $5,000,000 exclusive of interest and costs; and (c) no relevant exceptions apply to this claim.

18.   This Court has personal jurisdiction over Defendant because West Bend is organized under the laws of Wisconsin and maintains its principal place of business within the State of Wisconsin.

19.   Venue is proper in this District under 28 U.S.C. § 1391, because Defendant resides in this District and a substantial portion of the acts and conduct giving rise to the claims occurred within the District.

## III.   THE PARTIES

20.   Plaintiff Little Ones Preschool, Inc. is a corporation organized and existing under the laws of Illinois, with its principal place of business in Northbrook, Illinois.

21.   Defendant West Bend Mutual Insurance Company is an insurance company organized under the laws of the State of Wisconsin, with its principal place of business in West Bend, Wisconsin.

## IV.   FACTUAL BACKGROUND

*A.*   *The Special Property Coverage Form*

22.   In return for the payment of a premium, West Bend issued Policy Number A708028 00 to Plaintiff for a policy period of February 5, 2020, to February 5, 2021, including a Businessowners Special Property Coverage Form.  Policy Number A708028 00 is illustrative of policies with a Businessowners Special Property Coverage Form, are attached hereto as Exhibit

5

A. Plaintiff has performed all of its obligations under Policy Number A708028 00, including the payment of premiums. The Covered Property, with respect to the Special Property Coverage Form, is Little Ones located at 3433 Walters Avenue, Northbrook, Illinois 60062.

23. In many parts of the world, property insurance is sold on a specific peril basis. Such policies cover a risk of loss if that risk of loss is specifically listed (e.g., hurricane, earthquake, H1N1, etc.). Most property policies sold in the United States, however, including those sold by West Bend, are all-risk property damage policies. These types of policies cover all risks of loss except for risks that are expressly and specifically excluded. In the Special Property Coverage Form provided to Plaintiff, under the heading "Covered Causes of Loss," West Bend agreed to "pay for direct physical loss" to Covered Property "unless the loss is excluded or limited by" the policy.

24. Losses due to COVID-19 are a Covered Cause of Loss under West Bend policies with the Special Property Coverage Form.

25. In the Special Property Coverage Form, West Bend agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of their operations during the "period of restoration" caused by direct physical loss or damage. A "partial slowdown or complete cessation" of business activities at the Covered Property is a "suspension" under the policy, for which West Bend agreed to pay for loss of Business Income during the "period of restoration" that begins at the time of direct physical loss or damage.

26. "Business Income" means net income (or loss) before tax that Plaintiff and the other Class members would have earned if no physical loss or damage had occurred, as well as continuing normal operating expenses incurred.

6

27.     Plaintiff and the other Class Members' Covered Property suffered direct physical loss or damage.  Due to COVID-19, their Covered Property has become unsafe, and thus does not function, for its intended purpose.  Their Covered Properties' business functions have been impaired.  If they were to conduct business as usual, the disease and virus would show up and children and staff would get sick.  This is not a non-physical or remote loss such as one occasioned by a breach of contract, loss of a market, or the imposition of a governmental penalty.  It is a direct physical loss. In its current condition, Plaintiff and the other Class members' property is not functional for its business purposes.

28.     The presence of virus or disease can constitute physical damage to property, as the insurance industry has recognized since at least 2006.  When preparing so-called "virus" exclusions to be placed in some policies, but not others, the insurance industry drafting arm, Insurance Services Office ("ISO"), circulated a statement to state insurance regulators that included the following:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property.  When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses.  Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

29.     The presence of virus or disease has resulted in physical damage to property in that manner in this case.

30. In the Special Property Coverage Form, West Bend also agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not have incurred if there had been no direct physical loss or damage to the Covered Property.

31. "Extra Expense" includes expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

32. West Bend also agreed to "pay for the actual loss of Business Income" that Plaintiff sustains "and necessary Extra Expense" that Plaintiff incurs "caused by action of civil authority that prohibits access to" the Covered Property when a Covered Cause of Loss causes damage to property other than the Covered Property.

33. West Bend also agreed to pay "any loss of Business Income or any necessary Extra Expense costs," subject to a cap, that its insureds incur for a period beginning 24 hours after a jurisdictional board shuts down or suspends their operations "due to an outbreak of a 'communicable disease' or a 'water-borne pathogen' at the insured premises," and ending within 30 days after the insured is permitted to fully or partially resume their operations.

34. West Bend's Special Property Coverage Form, under a section entitled "Duties in the Event of Loss or Damage" mandates that West Bend's insureds "must see that the following are done in the event of loss. . . [t]ake all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim." This is commonly referred to as "Sue and Labor" coverage.

35. Losses caused by COVID-19 and the related orders issued by local, state, and federal authorities triggered the Business Income, Extra Expense, Civil Authority, Communicable Disease, and Sue and Labor provisions of the West Bend policy.

8

36.     Indeed, many governmental bodies specifically found that COVID-19 causes property damage when issuing stay at home orders. *See* N.Y.C. Emergency Exec. Order No. 100, at 2 (Mar. 16, 2020)[2] (emphasizing the virulence of COVID-19 and that it "physically is causing property loss and damage"); Broward Cty. Fla. Administrator's Emergency Order No. 20-01, at 2 (Mar. 22, 2020)[3] (noting that COVID-19 "constitutes a clear and present threat to the lives, health, welfare, and safety of the people of Broward County"); Harris Cty. Tex. Office of Homeland Security & Emergency Mgmt., Order of Cty. J. Lina Hidalgo, at 2 (Mar. 24, 2020)[4] (emphasizing that the COVID-19 virus can cause "property loss or damage" due to its contagious nature and transmission through "person-to-person contact, especially in group settings"); Napa Cty. Cal. Health & Human Service Agency, Order of the Napa Cty. Health Officer (Mar. 18, 2020)[5] (issuing restrictions based on evidence of the spread of COVID-19 within the Bay Area and Napa County "and the physical damage to property caused by the virus"); City of Key West Fla. State of Local Emergency Directive 2020-03, at 2 (Mar. 21, 2020)[6] (COVID-19 is "causing property damage due to its proclivity to attach to surfaces for prolonged periods of time");  City of Oakland Park Fla. Local Public Emergency Action Directive, at 2 (Mar. 19, 2020)[7] (COVID-19 is "physically causing property damage"); Panama City Fla. Resolution No. 20200318.1 (Mar. 18, 2020)[8] (stating that the resolution is necessary because of COVID-19's propensity to spread person to person and because the "virus physically is causing property damage"); Exec. Order of the Hillsborough Cty.

---

[2] https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2020/eeo-100.pdf
[3] https://www.broward.org/CoronaVirus/Documents/BerthaHenryExecutiveOrder20-01.pdf
[4] https://www.taa.org/wp-content/uploads/2020/03/03-24-20-Stay-Home-Work-Safe-Order_Harris-County.pdf
[5] https://www.countyofnapa.org/DocumentCenter/View/16687/3-18-2020-Shelter-at-Home-Order
[6] https://www.cityofkeywest-fl.gov/egov/documents/1584822002_20507.pdf
[7] https://oaklandparkfl.gov/DocumentCenter/View/8408/Local-Public-Emergency-Action-Directive-19-March-2020-PDF
[8] https://www.pcgov.org/AgendaCenter/ViewFile/Item/5711?fileID=16604

9

Fla. Emergency Policy Group, at 2 (Mar. 27, 2020)[9] (in addition to COVID-19's creation of a "dangerous physical condition," it also creates "property or business income loss and damage in certain circumstances"); Colorado Dep't of Pub. Health & Env't, Updated Public Health Order No. 20-24, at 1 (Mar. 26, 2020)[10] (emphasizing the danger of "property loss, contamination, and damage" due to COVID-19's "propensity to attach to surfaces for prolonged periods of time"); Sixth Supp. to San Francisco Mayoral Proclamation Declaring the Existence of a Local Emergency, 26 (Mar. 27, 2020)[11] ("This order and the previous orders issued during this emergency have all been issued … also because the virus physically is causing property loss or damage due to its proclivity to attach to surfaces for prolonged periods of time"); and City of Durham NC, Second Amendment to Declaration of State of Emergency, at 8 (effective Mar. 26, 2020)[12] (prohibiting entities that provide food services from allowing food to be eaten at the site where it is provided "due to the virus's propensity to physically impact surfaces and personal property").

## B.    *The Covered Cause of Loss*

37.    The threat and presence of COVID-19 with respect to other property has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiff's business (the "Closure Orders").

---

[9] https://www.hillsboroughcounty.org/library/hillsborough/media-center/documents/administrator/epg/saferathomeorder.pdf
[10] https://www.pueblo.us/DocumentCenter/View/26395/Updated-Public-Health-Order---032620
[11] https://sfgov.org/sunshine/sites/default/files/sotf_061020_item3.pdf
[12] https://durhamnc.gov/DocumentCenter/View/30043/City-of-Durham-Mayor-Emergency-Dec-Second-Amdmt-3-25-20_FINAL

### 1.  The COVID-19 Pandemic

38.  On March 11, 2020, the World Health Organization declared that COVID-19 constituted a global pandemic.

39.  According to the CDC, "COVID-19 is caused by a coronavirus called SARS-CoV-2. Coronaviruses are a large family of viruses that are common in people and [many] different species of animals, including camels, cattle, cats, and bats.  Rarely, animal coronaviruses can infect people and then spread between people."[13]  "The virus that causes COVID-19 is thought to spread mainly from person to person, mainly through respiratory droplets produced when an infected person coughs or sneezes. These droplets can land in the mouths or noses of people who are nearby or possibly be inhaled into the lungs. Spread is more likely when people are in close contact with one another (within about 6 feet)."[14]

40.  "It may be possible that a person can get COVID-19 by touching a surface or object that has the virus on it and then touching their own mouth, nose, or possibly their eyes."[15]  A scientific study investigating the stability of COVID-19 in different environmental conditions found that, following COVID-19 contamination, the virus could be detected hours later for tissues and paper, days later for wood, cloth and glass, or even a week later for stainless steel and plastic.[16]

---

[13] https://www.cdc.gov/coronavirus/2019-ncov/faq.html#Coronavirus-Disease-2019-Basics.   All websites last visited June 28, 2020.
[14] *Id.*
[15] https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html.
[16] *See* Alex W.H. Chin, et al., "Stability of SARS-CoV-2 in different environmental conditions," The Lancet Microbe (April 2, 2020), available at https://doi.org/10.1016/S2666-5247(20)30003-3.

## 2. **The Closure Orders**

41.     The presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiff's business (the "Closure Orders").

42.     On March 13, 2020, the State of Illinois issued an Executive Order (COVID-19 Executive Order No. 3) requiring that "all public and private schools in Illinois serving prekindergarten through 12th grade students must close for educational purposes" effective March 17, 2020.  The March 13th Order is attached hereto as Exhibit B.

43.     On or about March 20, 2020, the State of Illinois issued an Executive Order (COVID-19 Executive Order No. 8) that required residents to "stay at home or at their place of residence," and closed all Non-essential Businesses, effective March 21, 2020. These restrictions continued through May 29, 2020. The March 20th Order is attached hereto as Exhibit C.

44.     These Closure Orders and proclamations, as they relate to the closure of all "non-essential businesses," evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property. This is particularly true in places where business is conducted, such as Plaintiff's, as the requisite contact and interaction causes a heightened risk of the property becoming infected with COVID-19.

45.     The Closure Orders were issued in response to the rapid spread and presence of COVID-19 throughout Illinois.

46.     The Illinois Closure Orders were enforceable by State and local law enforcement.

47.      The Closure Orders prohibited access to Plaintiff's Covered Property and the area immediately surrounding Covered Property, in response to dangerous physical conditions resulting from a Covered Cause of Loss under the Policy, *i.e.* the COVID-19 pandemic.

### 3.     The Impact of COVID-19 and the Closure Orders

48.     On March 13, 2020, as a result of the COVID-19 pandemic and the Closure Orders referenced herein, Plaintiff was forced to close its doors to its preschool. The Closure Orders expressly precluded Plaintiff from operating its business.

49.     Indeed, the March 13, 2020, the Closure Order issued by the Governor of Illinois required preschools—including Plaintiff—to suspend its business.

50.     The March 13th order and other Closure Orders prohibited access to the Covered Property by requiring Plaintiff to completely cease its on-premises business operations and by prohibiting Plaintiff from using the Covered Property to operate its business.

51.     The threat and presence of COVID-19 caused direct physical loss of or damage to the each "Covered Property" under the Plaintiff and Class Members' policies, and the policies of the other Class Members, by impairing the function of and damaging the Covered Property, and by causing a necessary suspension of operations during a period of restoration.

52.     Plaintiff and Class Members' actual and immediate loss of the functionality its Covered Property and loss of business income due to the COVID-19 pandemic rendering the Covered Property uninhabitable or unfit for its intended use constitutes "direct physical loss" under the plain meaning of those words and a Covered Cause of Loss under the Policy.  This direct physical loss or damage caused Plaintiff and Class Members to suspend operations at the Covered Property.

53.     The Closure Orders prohibited access to Plaintiff's and the other Class Members' Covered Property, and the area immediately surrounding Covered Property, in response to dangerous physical conditions described above resulting from a Covered Cause of Loss.

13

54. As a result of the threat and presence of COVID-19 and the Closure Orders, Plaintiff and the other Class Members lost Business Income and incurred Extra Expense.

55. On or about May 11, 2020, Plaintiff submitted a claim for loss to West Bend under its policy due to the presence of COVID-19 and the Closure Orders. Plaintiff's claim was assigned number AM44462.

56. On or about May 13, 2020, Defendant denied Plaintiff's claim with number AM44462. *See* Exhibit D.

57. Indeed, West Bend has, on a widescale basis refused to provided Business Income, Extra Expense, Civil Authority, Communicable Disease, or Sue and Labor coverage due the COVID-19 and the resultant orders by civil authorities that have required the suspension of business.

## V. CLASS ACTION ALLEGATIONS

58. Plaintiff brings this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated.

59. Plaintiff seeks to represent nationwide classes defined as:

- All persons and entities that: (a) had Business Income coverage under a property insurance policy issued by West Bend; (b) suffered a suspension of business related to COVID-19, at the premises covered by their West Bend property insurance policy; (c) made a claim under their property insurance policy issued by West Bend; and (d) were denied Business Income coverage by West Bend for the suspension of business resulting from the presence or threat of COVID-19 (the "Business Income Breach Class").

- All persons and entities that: (a) had Civil Authority coverage under a property insurance policy issued by West Bend; (b) suffered loss of Business Income and/or Extra Expense caused by action of a civil authority; (c) made a claim under

14

their property insurance policy issued by West Bend; and (d) were denied Civil Authority coverage by West Bend for the loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Breach Class").

- All persons and entities that: (a) had Extra Expense coverage under a property insurance policy issued by West Bend; (b) sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their West Bend property insurance policy; (c) made a claim under their property insurance policy issued by West Bend; and (d) were denied Extra Expense coverage by West Bend despite their efforts to minimize the suspension of business caused by COVID-19 (the "Extra Expense Breach Class").

- All persons and entities that: (a) had Communicable Disease Business Income and Extra Expense Coverage under a property insurance policy issued by West Bend; (b) made a claim under their property insurance policy issued by West Bend; and (c) were denied Communicable Disease Business Income and Extra Expense Coverage by West Bend (the "Communicable Disease Breach Class").

- All persons and entities that: (a) had a Sue and Labor provision under a property insurance policy issued by West Bend; (b) sought to prevent property damage caused by COVID-19 by suspending or reducing business operations, at the premises covered by their West Bend property insurance policy; (c) made a claim under their property insurance policy issued by West Bend; and (d) were denied Sue and Labor coverage by West Bend in connection with the suspension of business caused by COVID-19 (the "Sue and Labor Breach Class").

- All persons and entities with Business Income coverage under a property insurance policy issued by West Bend that suffered a suspension of business due to COVID-19 at the premises covered by the business income coverage (the "Business Income Declaratory Judgment Class").

- All persons and entities with Civil Authority coverage under a property insurance policy issued by West Bend that suffered loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Declaratory Judgment Class").

15

- All persons and entities with Extra Expense coverage under a property insurance policy issued by West Bend that sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their West Bend property insurance policy (the "Extra Expense Declaratory Judgment Class").

- All persons and entities with Communicable Disease Business Income and Extra Expense Coverage under a property insurance policy issued by West Bend that were denied Communicable Disease Business Income and Extra Expense Coverage by West Bend (the "Communicable Disease Declaratory Judgment Class").

- All persons and entities with a Sue and Labor provision under a property insurance policy issued by West Bend that sought to prevent property damage caused by COVID-19 by suspending or reducing business operations, at the premises covered by their West Bend property insurance policy (the "Sue and Labor Declaratory Judgment Class").

60. Excluded from each defined Class is Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members. Plaintiff reserves the right to modify or amend each of the Class definitions, as appropriate, during the course of this litigation.

61. This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

62. **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The members of each defined Class are so numerous that individual joinder of all Class members is impracticable. While Plaintiff is informed and believe that there are thousands of members of each Class, the precise number of Class members is unknown to Plaintiff but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized, Court-

16

approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

63. **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting only individual Class members, including, without limitation:

    a.   whether the Class suffered a covered loss based on the common policies issued to members of the Class;

    b.   whether West Bend wrongfully denied all claims based on COVID-19;

    c.   whether West Bend's Business Income coverage applies to a suspension of business caused by COVID-19;

    d.   whether West Bend's Civil Authority coverage applies to a loss of Business Income caused by the orders of state governors requiring the suspension of business as a result of COVID-19;

    e.   whether West Bend's Extra Expense coverage applies to efforts to minimize a loss caused by COVID-19;

    f.   whether West Bend's Communicable Disease Business Income and Extra Expense Coverage applies to a suspension of business caused by COVID-19;

    g.   whether West Bend's Sue and Labor provision applies to require West Bend to pay for efforts to reduce damage caused by COVID-19;

    h.   whether West Bend has breached its contracts of insurance through a blanket denial of all claims based on business interruption, income loss or closures related to COVID-19 and the related closures; and

17

i. whether Plaintiff and the Class are entitled to an award of reasonable attorney fees, interest and costs.

64. **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class members' claims because Plaintiff and the other Class members are all similarly affected by Defendant's refusal to pay under its Business Income, Civil Authority, Extra Expense, Communicable Disease Business Income and Extra Expense, and Sue and Labor coverages. Plaintiff's claims are based upon the same legal theories as those of the other Class members. Plaintiff and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged.

65. **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because its interests do not conflict with the interests of the other Class members who they seek to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds by failing to pay the amounts owed under their policies, and Plaintiff intends to prosecute this action vigorously. The interests of the above-defined Classes will be fairly and adequately protected by Plaintiff and its counsel.

66. **Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests—Federal Rule of Civil Procedure 23(b)(1).** Plaintiff seeks class-wide adjudication as to the interpretation, and resultant scope, of Defendant's Business Income, Civil Authority, Extra Expense, Communicable Disease Business Income and Extra Expense, and Sue and Labor coverages. The prosecution of separate actions by individual members of the Classes would create an immediate risk of inconsistent or varying adjudications that would

18

establish incompatible standards of conduct for the Defendant. Moreover, the adjudications sought by Plaintiff could, as a practical matter, substantially impair or impede the ability of other Class members, who are not parties to this action, to protect their interests.

67. **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendant acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members.

68. **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.     CLAIMS FOR RELIEF

### COUNT I
### BREACH OF CONTRACT -- BUSINESS INCOME COVERAGE
(Claim Brought on Behalf of the Business Income Breach Class)

69. Plaintiff repeats, realleges, and incorporates by reference the allegations set forth in paragraphs 1-68 as if fully set forth herein.

70. Plaintiff brings this Count individually and on behalf of the other members of the Business Income Breach Class.

71. Plaintiff's West Bend policy, as well as those of the other Business Income Breach Class members, are contracts under which West Bend was paid premiums in exchange for its

19

promise to pay Plaintiff and the other Business Income Breach Class members' losses for claims covered by the policy.

72. In the Special Property Coverage Form, West Bend agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of their operations during the "period of restoration."

73. A "partial slowdown or complete cessation" of business activities at the Covered Property is a "suspension" under the policy, for which West Bend agreed to pay for loss of Business Income during the "period of restoration" that begins at the time of direct physical loss or damage.

74. "Business Income" means net income (or loss) before tax that Plaintiff and the other Class members would have earned if no physical loss or damage had occurred, as well as continuing normal operating expenses incurred.

75. COVID-19 caused direct physical loss and damage to Plaintiff and the other Business Income Breach Class members' Covered Properties, requiring suspension of operations at Covered Properties. Losses caused by COVID-19 thus triggered the Business Income provision of Plaintiff and the other Business Income Breach Class members' West Bend policies.

76. Plaintiff and the other Business Income Breach Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by West Bend or West Bend is estopped from asserting them, and yet West Bend has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

77. By denying coverage for any Business Income losses incurred by Plaintiff and the other Business Income Breach Class members in connection with the COVID-19 pandemic, West Bend has breached its coverage obligations under the policies.

20

78.     As a result of West Bend's breaches of the policies, Plaintiff and the other Business Income Breach Class members have sustained substantial damages for which West Bend is liable, in an amount to be established at trial.

## COUNT II
## BREACH OF CONTRACT – CIVIL AUTHORITY COVERAGE
### (Claim Brought on Behalf of the Civil Authority Breach Class)

79.     Plaintiff repeats, realleges, and incorporates by reference the allegations set forth in paragraphs 1-68 as if fully set forth herein.

80.     Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Breach Class.

81.     Plaintiff's West Bend insurance policy, as well as those of the other Civil Authority Breach Class members, are contracts under which West Bend was paid premiums in exchange for its promise to pay Plaintiff and the other Civil Authority Breach Class members' losses for claims covered by the policy.

82.     West Bend agreed to "pay for the actual loss of Business Income" that Plaintiff sustains "and necessary Extra Expense" that Plaintiff incurs "caused by action of civil authority that prohibits access to" the Covered Property when a Covered Cause of Loss causes damage to property other than the Covered Property.

83.     The Closure Orders triggered the Civil Authority provision under Plaintiff's and the other members of the Civil Authority Breach Class's West Bend insurance policies. COVID-19 caused direct physical loss or damage to property near the Covered Property in the same manner described above that it caused direct physical loss or damage to the Covered Property. The civil authority orders were actions taken in response to the dangerous physical conditions resulting from

21

the direct physical loss or damage to such properties. And, the civil authority orders prohibited access to an immediately surrounding area that included the Covered Property.

84.     Plaintiff and the other members of the Civil Authority Breach Class have complied with all applicable provisions of the policies and/or those provisions have been waived by West Bend or West Bend is estopped from asserting them, and yet West Bend has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms. By denying coverage for any business losses incurred by Plaintiff and other members of the Civil Authority Breach Class in connection with the Closure Orders and the COVID-19 pandemic, West Bend has breached its coverage obligations under the policies.

85.     As a result of West Bend's breaches of the policies, Plaintiff and the other members of the Civil Authority Breach Class have sustained substantial damages for which West Bend is liable, in an amount to be established at trial

**COUNT III**
**BREACH OF CONTRACT – EXTRA EXPENSE COVERAGE**
**(Claim Brought on Behalf of the Extra Expense Breach Class)**

86.     Plaintiff repeats, realleges, and incorporates by reference the allegations set forth in paragraphs 1-68 as if fully set forth herein.

87.      Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Breach Class.

88.     Plaintiff's West Bend insurance policy, as well as those of the other Extra Expense Breach Class members, are contracts under which West Bend was paid premiums in exchange for its promise to pay Plaintiff's and the other Extra Expense Breach Class members' losses for claims covered by the policy.

89.     In the Special Property Coverage Form, West Bend also agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not have incurred if there had been no direct physical loss or damage to the Covered Property.

90.     "Extra Expense" includes expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

91.     Due to COVID-19 and the Closure Orders, Plaintiff and the other members of the Extra Expense Breach Class incurred Extra Expense at Covered Property

92.     Plaintiff and the other members of the Extra Expense Breach Class have complied with all applicable provisions of the policies and/or those provisions have been waived by West Bend or West Bend is estopped from asserting them, and yet West Bend has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

93.     By denying coverage for any business losses incurred by Plaintiff and the other members of the Extra Expense Breach Class in connection with the Closure Orders and the COVID-19 pandemic, West Bend has breached its coverage obligations under the policies.

94.     As a result of West Bend's breaches of the policies, Plaintiff and the other members of the Extra Expense Breach Class have sustained substantial damages for which West Bend is liable, in an amount to be established at trial.

## COUNT IV
## BREACH OF CONTRACT – COMMUNICABLE DISEASE COVERAGE
### (Claim Brought on Behalf of the Communicable Disease Breach Class)

95.     Plaintiff repeats, realleges, and incorporates by reference the allegations set forth in paragraphs 1-68 as if fully set forth herein.

96.     Plaintiff brings this Count individually and on behalf of the other members of the Communicable Disease Breach Class.

23

97.     Plaintiff's West Bend insurance policy, as well as those of the other Communicable Disease Breach Class members, are contracts under which West Bend was paid premiums in exchange for its promise to pay Plaintiff's and the other Communicable Disease Breach Class members' losses for claims covered by the policy.

98.     In the Special Property Coverage Form, West Bend also agreed to pay "any loss of Business Income or any necessary Extra Expense costs," subject to a cap, "due to an outbreak of a 'communicable disease,'" beginning 24 hours after shut down or suspension by a jurisdictional board and ending within 30 days after the insured is permitted to fully or partially resume their operations.

99.     Due to COVID-19 and the Closure Orders, Plaintiff and the other members of the Communicable Disease Breach Class lost Business Income and incurred Extra Expense at Covered Property.

100.    Plaintiff and the other members of the Communicable Disease Breach Class have complied with all applicable provisions of the policies and/or those provisions have been waived by West Bend or West Bend is estopped from asserting them, and yet West Bend has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

101.    By denying coverage for any business losses incurred by Plaintiff and the other members of the Communicable Disease Breach Class in connection with the Closure Orders and the COVID-19 pandemic, West Bend has breached its coverage obligations under the policies.

102.    As a result of West Bend's breaches of the policies, Plaintiff and the other members of the Communicable Disease Breach Class have sustained substantial damages for which West Bend is liable, in an amount to be established at trial.

**COUNT V**
**BREACH OF CONTRACT – SUE AND LABOR COVERAGE**
**(Claim Brought on Behalf of the Sue and Labor Breach Class)**

103.    Plaintiff repeats, realleges, and incorporates by reference the allegations set forth in paragraphs 1-68 as if fully set forth herein.

104.    Plaintiff brings this Count individually and on behalf of the other members of the Sue and Labor Breach Class.

105.    Plaintiff's West Bend policy, as well as those of the other Sue and Labor Breach Class members, are contracts under which West Bend was paid premiums in exchange for its promise to pay Plaintiff's and the other Sue and Labor Breach Class members' losses for claims covered by the policy.

106.    In the Special Property Coverage Form, West Bend agreed to give due consideration in settlement of a claim to expenses incurred in taking all reasonable steps to protect Covered Property from further damage.

107.    In complying with the Closure Orders and otherwise suspending or limiting operations, Plaintiff and other members of the Sue and Labor Breach Class incurred expenses in connection with reasonable steps to protect Covered Property. Plaintiff and the other members of the Sue and Labor Breach Class have complied with all applicable provisions of the policy and/or those provisions have been waived by West Bend or West Bend is estopped from asserting them, and yet West Bend has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

108.    By denying coverage for any Sue and Labor expenses incurred by Plaintiff and the other members of the Sue and Labor Breach Class in connection with the Closure Orders and the COVID-19 pandemic, West Bend has breached its coverage obligations under the policies.

25

109.     As a result of West Bend's breaches of the policies, Plaintiff and the other members of the Sue and Labor Breach Class have sustained substantial damages for which West Bend is liable, in an amount to be established at trial.

**Count VI**
**DECLARATORY JUDGMENT – BUSINESS INCOME COVERAGE**
**(Claim Brought on Behalf of the Business Income Declaratory Judgment Class)**

110.     Plaintiff repeats and realleges Paragraphs 1-68 as if fully set forth herein.

111.     Plaintiff brings this Count individually and on behalf of the other members of the Business Income Declaratory Judgment Class.

112.     Plaintiff's West Bend policy, as well as those of the other Business Income Declaratory Judgment Class members, are contracts under which West Bend was paid premiums in exchange for its promise to pay Plaintiff's and the other Business Income Declaratory Judgment Class members' losses for claims covered by the policy.

113.     Plaintiff and the other Business Income Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by West Bend or West Bend is estopped from asserting them, and yet West Bend has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and the other Business Income Declaratory Judgment Class members are entitled.

114.     West Bend has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

115.     An actual case or controversy exists regarding Plaintiffs and the other Business Income Declaratory Judgment Class members' rights and West Bend's obligations under the

26

policies to reimburse Plaintiff for the full amount of Business Income losses incurred by Plaintiff and the other Business Income Declaratory Judgment Class members in connection with suspension of their businesses stemming from the COVID-19 pandemic.

116. Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Business Income Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

  i. Plaintiff and the other Business Income Declaratory Judgment Class members' Business Income losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

  ii. West Bend is obligated to pay Plaintiff and the other Business Income Declaratory Judgment Class members for the full amount of the Business Income losses incurred and to be incurred in connection with the Closure Orders during the period of restoration and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT VII**
**DECLARATORY JUDGMENT – CIVIL AUTHORITY COVERAGE**
**(Claim Brought on Behalf of the Civil Authority Declaratory Judgment Class)**

117. Plaintiff repeats and realleges Paragraphs 1-68 as if fully set forth herein.

118. Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Declaratory Judgment Class.

119. Plaintiff's West Bend insurance policy, as well as those of the other Civil Authority Declaratory Judgment Class members, are contracts under which West Bend was paid premiums in exchange for its promise to pay Plaintiff's and the other Civil Authority Declaratory Judgment Class members' losses for claims covered by the policy.

27

120.    Plaintiff and the other Civil Authority Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by West Bend or West Bend is estopped from asserting them, and yet West Bend has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and the other Class members are entitled.

121.    West Bend has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

122.    An actual case or controversy exists regarding Plaintiff and the other Civil Authority Declaratory Judgment Class members' rights and West Bend's obligations under the policies to reimburse Plaintiff and the other Civil Authority Declaratory Judgment Class members for the full amount of covered Civil Authority losses incurred by Plaintiff and the other Civil Authority Declaratory Judgment Class members in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

123.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Civil Authority Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

    i.    Plaintiff and the other Civil Authority Declaratory Judgment Class members' Civil Authority losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

    ii.    West Bend is obligated to pay Plaintiff and the other Civil Authority Declaratory Judgment Class members the full amount of the Civil Authority losses incurred

and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT VIII**
**DECLARATORY JUDGMENT – EXTRA EXPENSE COVERAGE**
**(Claim Brought on Behalf of the Extra Expense Declaratory Judgment Class)**

124.    Plaintiff repeats and realleges Paragraphs 1-68 as if fully set forth herein.

125.    Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Declaratory Judgment Class.

126.    Plaintiff's West Bend insurance policy, as well as those of the other Extra Expense Declaratory Judgment Class members, are contracts under which West Bend was paid premiums in exchange for its promise to pay Plaintiff and the other Extra Expense Declaratory Judgment Class members' losses for claims covered by the policy.

127.    Plaintiff and the other Extra Expense Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by West Bend or West Bend is estopped from asserting them, and yet West Bend has abrogated its insurance coverage obligations pursuant to the policies clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and the other Class members are entitled.

128.    West Bend has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

129.    An actual case or controversy exists regarding Plaintiff and the other Extra Expense Declaratory Judgment Class members' rights and West Bend's obligations under the policies to

29

reimburse Plaintiff and the other Extra Expense Declaratory Judgment Class members for the full amount of Extra Expense losses incurred by Plaintiff in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

130.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Extra Expense Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

    i.    Plaintiff and the other Extra Expense Declaratory Judgment Class members' Extra Expense losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

    ii.    West Bend is obligated to pay Plaintiff and the other Extra Expense Declaratory Judgment Class members for the full amount of the Extra Expense losses incurred and to be incurred in connection with the covered losses related to the Closure Orders during the period of restoration and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

## COUNT IX
## DECLARATORY JUDGMENT – COMMUNICABLE DISEASE COVERAGE
### (Claim Brought on Behalf of the Communicable Disease Declaratory Judgment Class)

131.    Plaintiff repeats and realleges Paragraphs 1-68 as if fully set forth herein.

132.    Plaintiff brings this Count individually and on behalf of the other members of the Communicable Disease Declaratory Judgment Class.

133.    Plaintiff's West Bend insurance policy, as well as those of the other Communicable Disease Declaratory Judgment Class members, are contracts under which West Bend was paid premiums in exchange for its promise to pay Plaintiff and the other Communicable Disease Declaratory Judgment Class members' losses for claims covered by the policy.

30

134. Plaintiff and the other Communicable Disease Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by West Bend or West Bend is estopped from asserting them, and yet West Bend has abrogated its insurance coverage obligations pursuant to the policies clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and the other Class members are entitled.

135. West Bend has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

136. An actual case or controversy exists regarding Plaintiff and the other Communicable Disease Declaratory Judgment Class members' rights and West Bend's obligations under the policies to reimburse Plaintiff and the other Communicable Disease Declaratory Judgment Class members for the full amount of Communicable Disease Business Income and Extra Expense Coverage losses incurred by Plaintiff in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

137. Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Communicable Disease Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

      i. Plaintiff and the other Communicable Disease Declaratory Judgment Class members' Communicable Disease Business Income and Extra Expense Coverage losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

ii. West Bend is obligated to pay Plaintiff and the other Communicable Disease Declaratory Judgment Class members for the full amount of the Communicable Disease Business Income and Extra Expense Coverage losses incurred and to be incurred in connection with the covered losses related to the Closure Orders during the period of restoration and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT X**
**DECLARATORY JUDGMENT – SUE AND LABOR COVERAGE**
**(Claim Brought on Behalf of the Sue and Labor Declaratory Judgment Class)**

138. Plaintiff repeats and realleges Paragraphs 1-68 as if fully set forth herein.

139. Plaintiff brings this Count individually and on behalf of the other members of the Sue and Labor Declaratory Judgment Class.

140. Plaintiff's West Bend insurance policy, as well as those of the other Sue and Labor Declaratory Judgment Class members, are contracts under which West Bend was paid premiums in exchange for its promise to pay Plaintiff and the other Sue and Labor Declaratory Judgment Class members' reasonably incurred expenses to protect Covered Property.

141. Plaintiff and the other Sue and Labor Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by West Bend or West Bend is estopped from asserting them, and yet West Bend has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff is entitled.

142. West Bend has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

32

143.    An actual case or controversy exists regarding Plaintiff and the other Sue and Labor Declaratory Judgment Class members' rights and West Bend's obligations under the policies to reimburse Plaintiff and the other Sue and Labor Declaratory Judgment Class members for the full amount Plaintiff and the other members of the Sue and Labor Declaratory Judgment Class reasonably incurred to protect Covered Property from further damage by COVID-19.

144.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Sue and Labor Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

    i.    Plaintiff and the other Sue and Labor Declaratory Judgment Class members reasonably incurred expenses to protect Covered Property from further damage by COVID-19 are insured losses under their policies; and

    ii.    West Bend is obligated to pay Plaintiff and the other Sue and Labor Declaratory Judgment Class members for the full amount of the expenses they reasonably incurred to protect Covered Property from further damage by COVID-19.

## VII.    REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Class Members, respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

a.    Entering an order certifying the proposed nationwide Classes, as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's undersigned attorneys as Counsel for the Classes;

b.    Entering judgment on Counts I-V in favor of Plaintiff and the Members of the Business Income Breach Class, the Civil Authority Breach Class, the Extra Expense Breach Class, the Communicable Disease Breach Class, and the Sue and Labor Breach Class; and awarding damages for breach of contract in an amount to be determined at trial;

33

c.     Entering declaratory judgments on Counts VI-X in favor of Plaintiff and the members of the Business Income Breach Class, the Civil Authority Breach Class, the Extra Expense Breach Class, the Communicable Disease Breach Class, and the Sue and Labor Breach Class as follows:

       i.     Business Income, Civil Authority, Extra Expense, Communicable Disease Business Income and Extra Expense Coverage, and Sue and Labor losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

      ii.     West Bend is obligated to pay for the full amount of the Business Income, Civil Authority, Extra Expense, Communicable Disease Business Income and Extra Expense, and Sue and Labor losses incurred and to be incurred related to COVID-19, the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic;

d.     Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

e.     Ordering Defendant to pay attorneys' fees and costs of suit; and

f.     Ordering such other and further relief as may be just and proper.

## VIII.   JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: September 10, 2020      Respectfully submitted,

*s/ W. Daniel "Dee" Miles, III*
W. Daniel "Dee" Miles, III
Rachel N. Boyd
Paul W. Evans
**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**
218 Commerce Street

34

Montgomery, AL  36104
Telephone: (334) 269-2343
Facsimile: (334) 954-7555
dee.miles@beasleyallen.com
rachel.boyd@beasleyallen.com
paul.evans@beasleyallen.com

Timothy W. Burns (State Bar No. 1068086)
Jeff J. Bowen (State Bar No. 1074862)
Jesse J. Bair (State Bar No. 1083779)
Freya K. Bowen (State Bar No. 1066820)
**BURNS BOWEN BAIR LLP**
One South Pinckney Street, Suite 930
Madison, Wisconsin 53703
Telephone: 608-286-2302
tburns@bbblawllp.com
jbowen@bbblawllp.com
jbair@bbblawllp.com
fbowen@bbblawllp.com

Richard M. Golomb, Esq.
Kenneth J. Grunfeld, Esq.
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 985-9177
rgolomb@golombhonik.com
kgrunfeld@golombhonik.com

Arnold Levin, Esq.
Laurence S. Berman, Esq.
Frederick Longer, Esq.
Daniel Levin, Esq.
**LEVIN SEDRAN & BERMAN, L.L.P.**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
alevin@lfsblaw.com
lberman@lfsblaw.com
flonger@lfsblaw.com
dlevin@lfsblaw.com

***Counsel for Plaintiff and the Proposed Class***

35