# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LITTLE ONES PRESCHOOL INC.,

                Plaintiff,

v.

WEST BEND MUTUAL INSURANCE COMPANY,

                Defendant.

Case No. 20-CV-1428-JPS

**ORDER**

## 1. BACKGROUND

In September 2020, Plaintiff brought this action against Defendant, individually and on behalf of several proposed nationwide classes. (Docket #1 at 14–16). Thereafter, Defendant filed a motion to dismiss Plaintiff's initial complaint and a motion to strike Plaintiff's class allegations. (Docket #10, #13). Plaintiff then filed an amended complaint. (Docket #19). Now before the Court are Defendant's motion to dismiss Plaintiff's amended complaint and motion to strike the class allegations therein. (Docket #24, #26). The Court has reviewed the parties' submissions and, for the reasons discussed in the balance of this Order, it will grant Defendant's motion to dismiss and deny as moot Defendant's motion to strike class allegations.[1]

## 2. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that "fail[] to state a claim upon which relief can be granted." To state a claim, a complaint must provide "a short and plain statement of

---

[1] The Court will also deny as moot Defendant's initial motions to dismiss and to strike Plaintiff's class allegations. (Docket #10, #13).

the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (citation and alteration omitted). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81. However, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (citing *Iqbal*, 556 U.S. at 663).

3.    **RELEVANT FACTS**[2]

    3.1    **The Parties**

Plaintiff is an Illinois corporation with its principal place of business in Northbrook, Illinois. There, Plaintiff owns and operates a preschool and an extended day program for children ages two through five. Defendant is

---

[2]The relevant facts are from Plaintiff's amended complaint, (Docket #19). Further, pursuant to Federal Rule of Civil Procedure 10(c), the Court also considers "[a] copy of a written instrument that is an exhibit to a pleading" as "a part of the pleading for all purposes." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) ("Because the letter was attached to the complaint, it became a part of [the complaint] for all purposes . . . and so the judge could consider it in deciding the motion to dismiss without having to convert the motion to one for summary judgment."). To the extent the Court refers to any documents attached to Plaintiff's amended complaint, the Court provides a citation thereto.

a Wisconsin-based insurance company, organized pursuant to Wisconsin law.

Plaintiff paid Defendant a premium, and, in exchange, Defendant issued Policy Number A708028 (the "Policy"), pursuant to the terms of which Defendant would provide insurance coverage to Plaintiff from February 5, 2020, to February 5, 2021. (*See* Docket #19-1). The Policy is an "all-risk" policy, meaning that it covers all risks of loss except for those that are expressly and specifically excluded. As part of the Policy, Defendant also issued Plaintiff a Businessowners Specialty Property Coverage Form, Form NS 0203 01 18 (the "Form"). (*Id.* at 34–74). Notably, the Form provided additional types of coverage and contained multiple policy exclusions. The Form covered Plaintiff's property in Northbrook, Illinois (the "Covered Property").

### 3.2 Illinois Closure Orders

On March 11, 2020, the World Health Organization declared that COVID-19 constituted a global pandemic. As the Seventh Circuit succinctly stated, "COVID-19 requires no introduction," as it has "spread around the world, resulting in an unprecedented global pandemic that has disrupted every aspect of public life." *Mays v. Dart*, 974 F.3d 810, 815 (7th Cir. 2020), *petition for cert. filed* (U.S. Jan. 26, 2021) (No. 20-990). In response to the wildfire-like spread of COVID-19, Illinois Governor JB Pritzker issued an executive order, ordering that "[b]eginning March 17, 2020, all public and private schools in Illinois serving pre-kindergarten through 12th grade students must close for educational purposes through March 30, 2020." (Docket #19-2 at 2).

Then, on March 20, 2020, Governor Pritzker issued another executive order, in which the Governor ordered "all individuals currently living

within . . . Illinois . . . to stay at home or at their place of residence," subject to certain exceptions. (Docket #19-3 at 2). Further, all non-essential business were closed effective March 21, 2020 until May 29, 2020. Plaintiff avers that it was required to close indefinitely, as the result of the Governor's March 13, 2020 order.[3] According to Plaintiff, the Governor's orders prohibited access to the Covered Property by requiring Plaintiff to completely cease its on-premises business operations and by prohibiting Plaintiff from using the Covered Property to operate its business.

### 3.3   Plaintiff's Claim for Coverage

As a result of the threat and presence of COVID-19 and Governor Pritzker's executive orders, Plaintiff avers that it submitted a claim to Defendant on May 11, 2020. On May 13, 2020, Defendant denied Plaintiff's claim. (*See* Docket #19-4). Plaintiff avers that Defendant breached the terms of the following types of coverage, as provided in the Form, for which Plaintiff seeks damages: (1) Business Income Coverage; (2) Extra Expense Coverage; (3) Civil Authority Coverage; (4) Communicable Disease Coverage; and (5) Duties in the Event of Loss provision.[4] Plaintiff, individually and on behalf the proposed nationwide classes, also seeks declaratory judgments regarding Plaintiff's losses and Defendant's obligations under those provisions. Because the crux of Plaintiff's claims

---

[3]Defendant disputes whether Plaintiff is truly a non-essential business, noting that "the Illinois Orders attached to Plaintiff's amended complaint expressly permitted access to the insured premises. For instance, COVID-19 Executive Order No. 8 designated education institutions, included public and private pre-K-12 schools, as 'Essential Businesses and Operations . . . .'" (Docket #25 at 21).

[4]Throughout its amended complaint, Plaintiff refers to this provision as the "Sue and Labor" provision. (*See, e.g.,* Docket #19 at 4).

depends on the Form's language, the Court reproduces the relevant policy language below.

### 3.3.1 Business Income Coverage

Under the "Business Income" provision, Defendant:

> will pay for the actual loss of Business Income [that a policyholder] sustain[s] due to the necessary suspension of [the policyholder's] "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

(Docket #19-1 at 37). The Form defines a "period of restoration" as "the period of time that . . . [b]egins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises," and "[e]nds on the earlier of . . . [t]he date when the property at the described premises should be repaired, rebuilt, or replaced with reasonable speed and similar quality or . . . [t]he date when business is resumed at a new permanent location." (*Id.* at 73). Lastly, the Form defines "Covered Cause of Loss" as "[d]irect physical loss unless the loss is excluded or limited." (*Id.* at 35).[5]

### 3.3.2 Extra Expense Coverage

Pursuant to the Extra Expense provision in the Form, Defendant:

> will pay necessary Extra Expense [that a policyholder] incur[s] during the "period of restoration" that [the policyholder] would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

---

[5]The foregoing definitions for "period of restoration" and "Covered Cause of Loss" also apply to the Extra Expense provision.

(*Id.* at 44). According to the Form, an "Extra Expense" is:

> expense incurred . . . [t]o avoid or minimize the suspension of business and to continue 'operations' . . . [t]o minimize the suspension of business if you cannot continue 'operations' . . . [or] [t]o repair or replace any property or . . . [r]esearch, replace or restore the lost information on damaged 'valuable papers and records, to the extent it reduces the amount of loss that otherwise would have been payable [under the Form].

(*Id.* at 44–45).

### 3.3.3 Civil Authority Coverage

As enumerated in the Form, Defendant also provides "Civil Authority Coverage" to Plaintiff. Pursuant to this provision:

> [w]hen a Covered Cause of Loss causes damage to property other than property at the described premises, [Defendant] will pay for the actual loss of Business Income[6] [that a policyholder] sustain[s] and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises provided that both of the following apply: (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(*Id.* at 39).

---

[6]Pursuant to the Civil Authority provision, "[t]he definitions of Business Income and Extra Expense . . . also apply to this Civil Authority . . . Coverage." (Docket #19-1 at 40).

### 3.3.4 Communicable Disease Coverage

Further, Defendant provides "Communicable Disease Business Income and Extra Expense Coverage" to Plaintiff. (*Id.* at 41). According to this provision of the Form, Defendant will pay for Plaintiff's "actual loss of Business Income or Extra Expense" that Plaintiff sustains "as the result of Plaintiff's 'operations' being temporarily shut down or suspended as ordered by a local, state, or federal board of health or similar governmental board that has jurisdiction over [Plaintiff's] 'operations.'" (*Id.*) Notably, the shutdown or suspension "must be due to an outbreak of a 'communicable disease' or a 'waterborne pathogen'" at Plaintiff's premises. (*Id.*) Defendant will pay for Plaintiff's loss of Business Income or any necessary Extra Expense resulting from Plaintiff's (1) cleaning and disinfecting its equipment and insured premises, (2) replacing contaminated consumable goods, (3) testing the insured premises to confirm the elimination of disease or pathogen, (4) providing medical tests and care to infected persons, (5) advertising in order to restore Plaintiff's business reputation, (6) evacuating the insured premises, (7) relocating as necessary to minimize the suspension of business, and (8) minimizing the suspension of operations. (*Id.*)

### 3.3.5 Duties in the Event of Loss or Damage

The Form's "Duties in the Event of Loss or Damage" provision (the "Duties Section") obligates Plaintiff to take certain actions "in the event of loss or damage to Covered Property[.]" (*Id.* at 68). Specifically, the Duties Section requires Plaintiff to "[t]ake all reasonable steps to protect the Covered Property from further damage, and keep a record of [its] expenses necessary to protect the Covered Property, for consideration in the settlement of the claim." (*Id.*) The Duties Section makes clear that such

actions "will not increase the Limit of Insurance," and that Defendant "will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss." (*Id.*)

### 3.3.6 Virus or Bacteria Exclusion

Although Defendant provides several types of coverage, the Form also enumerates several exclusions. (*See generally id.* at 62–66). According to the Virus or Bacteria exclusion (the "Virus Exclusion"), Defendant "will not pay for loss or damage caused directly or indirectly by . . . [a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (*Id.* at 65).

## 4. ANALYSIS

### 4.1 Applicable State Law

Whether Plaintiff has stated a viable claim for relief turns on the Court's interpretation of the Form's language. Because the Court is sitting in diversity in this case, it shall "appl[y] the law of the state in which it sits, including the state's choice-of-law rules." *BB Syndication Servs., Inc. v. First Am. Title Ins. Co.*, 780 F.3d 825, 829 (7th Cir. 2015). Thus, Wisconsin choice-of-law rules apply. When determining "which jurisdiction's law applies to a contractual dispute," Wisconsin courts apply "the law of the jurisdiction with which the contract has its most significant relationship." *State Farm Mut. Auto. Ins. Co. v. Gillette*, 641 N.W.2d 662, 670–71 (Wis. 2002) (citations and alterations omitted). Here, the parties agree that the Court must look to Illinois law when interpreting the Form as to Plaintiff's claims. (*See* Docket #25 at 13 n.3, #28 at 14).

As Illinois law makes clear, "[a]n insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." *Hobbs v. Hartford Ins.*

*Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005). When interpreting a contract, a court's "primary function is to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1003 (Ill. 2010). "In performing that task, the court must construe the policy as a whole, taking into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Nicor, Inc. v. Associated Elec. & Gas Ins. Servs. Ltd.*, 860 N.E.2d 280, 286 (Ill. 2006).

Courts "should give a natural and reasonable construction to an insurance policy." *Drs. Direct Ins. Inc. v. Bochenek*, 38 N.E.3d 116, 123 (Ill. App. Ct. 2015). "If the policy terms are clear and unambiguous, they must be given their plain and ordinary meanings." *Bozek v. Erie Ins. Grp.*, 46 N.E.3d 362, 367 (Ill. App. Ct. 2015). "An ambiguity exists where the language is obscure in meaning through indefiniteness of expression or where the language is reasonably susceptible to more than one meaning." *Id.*; *see also Bochenek*, 38 N.E.3d at 123 ("A term is ambiguous, and construed against the drafter of the policy, if it is subject to more than one reasonable interpretation within the context in which it appears."). However, "the absence of a definition does not render a policy term ambiguous, nor is it ambiguous simply because the parties can suggest creative possibilities for its meaning." *Smith v. Neumann*, 682 N.E.2d 1245, 1250 (Ill. App. Ct. 1997). Further, courts "will not strain to find an ambiguity where none exists, nor will [they] consider an interpretation that is unreasonable or leads to absurd results." *Bozek*, 46 N.E.3d at 368. Yet, if an ambiguity exists, courts are obligated to construe the policy "strictly against the insurer, who drafted the policy . . . and liberally in favor of coverage for the insured." *Nicor*, 860 N.E.2d at 286. (internal citations omitted). Having laid out the rules of

contract interpretation to which this Court must adhere, the Court now turns to Defendant's motion to dismiss.

### 4.2 Business Income & Extra Expense Coverage Claims

Defendant denied Plaintiff's claim for Business Income coverage because, according to Defendant, "there [was] no physical loss or damage to the property described in the premises . . . ." (Docket #19-4 at 5).[7] In other words, Plaintiff must sustain "direct physical loss or damage" to the Covered Property to trigger coverage under both the Business Income and Extra Expense provisions. *See supra* Sections 3.3.1 and 3.3.2. Because the Form does not define the terms "physical loss or damage to," in accordance with Illinois law, the Court looks to the dictionary to determine the "plain, ordinary and popular meaning[s]" of those terms. *Munoz*, 930 N.E.2d at 1005.

When used as an adjective, the word "direct" means "stemming immediately from a source" and "marked by absence of an intervening agency, instrumentality, or influence."[8] The term "physical" is defined as "having material existence: perceptible especially through the senses and subject to the laws of nature."[9] Another definition for "physical" is "of or

---

[7]Defendant's letter does not expressly mention Plaintiff's seeking, nor Defendant's denying to Plaintiff, Extra Expense coverage. However, because Plaintiff brings claims regarding both Extra Expense and Business Income coverage in its complaint, and because the applicability of Extra Expense coverage to Plaintiff also turns on an interpretation of the terms "direct physical loss or damage," the Court will jointly address Plaintiff's claims as to these provisions.

[8]*Direct*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/direct (last visited Sept. 3, 2021).

[9]*Physical*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/physical (last visited Sept. 3, 2021).

relating to material things."[10] The first definition for the term "loss" is "destruction and ruin,"[11] while synonyms for "loss" include "deprivation" and "dispossession."[12] And lastly, the term "damage" is defined as the "loss or harm resulting from injury to person, property, or reputation."[13] The Court takes judicial notice of each of the foregoing definitions.[14]

According to Plaintiff's complaint, it sustained "physical loss of or damage to" the Covered Property because the threat and/or presence of COVID-19 impaired the functionality of the Covered Property, rendering it uninhabitable or unfit for its intended use. (*See* Docket #19 at 7–8, 13–14). In its motion to dismiss, Defendant argues that Plaintiff did not allege that its property has been lost, requiring replacement or rebuilding, or damaged, requiring repair. (Docket #25 at 20). Instead, Defendant advances that Plaintiff actually alleged pure economic loss occasioned by a loss of use of

---

[10]*Id.*

[11]*Loss*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/loss (last visited Sept. 3, 2021).

[12]*Loss*, Merriam-Webster Thesaurus, https://www.merriam-webster.com/thesaurus/loss (last visited Sept. 3, 2021).

[13]*Damage*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/damage (last visited Sept. 3, 2021).

[14]*See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see also Winston v. Hepp*, Case No. 18-cv-1938-pp, 2020 WL 1509519, at *8 (E.D. Wis. Mar. 30, 2020) (declining to take judicial notice of judicial decisions proffered by petitioner because such decisions were "not capable of ready and accurate determination by resort to sources whose accuracy cannot be questioned" such as "a dictionary or an almanac or an encyclopedia."); *Clark v. Walt Disney Co.*, 642 F. Supp. 2d 775, 782 (S.D. Ohio 2009) (holding that the court could take judicial notice of dictionary definitions without converting a motion to dismiss into a motion for summary judgment because "a dictionary is one of those sources whose accuracy cannot reasonably be questioned . . . .").

its property. (*Id.*) In reply, Plaintiff claims that Defendant's reading of "direct physical loss of or damage to" incorrectly requires Plaintiff to plead that its Covered Property was structurally altered to be covered under the Business Income and Extra Expense provisions. (Docket #28 at 16–21). Plaintiff explains that, even if the terms "direct physical loss of or damage to" require a structural alteration, Plaintiff has sufficiently pleaded that its property was structurally altered. (*Id.* at 21–31).

Other parties have made the same or similar arguments before this Court, and, in both instances, the Court has granted the defendants' respective dispositive motions. *See Paradigm Care & Enrichment Ctr., LLC v. West Bend Mut. Ins. Co.*, Case No. 20-CV-720-JPS, 2021 WL 1169565, at *1 (E.D. Wis. Mar. 3, 2021) (granting the defendant's motion to dismiss), *appeal docketed* No. 21-1695 (7th Cir. Apr. 20, 2021); *Biltrite Furniture, Inc. v. Ohio Sec. Ins. Co.*, Case No. 20-CV-656-JPS, 2021 WL 3056191, at *1 (E.D. Wis. July 20, 2021) (granting the defendant's motion for judgment on the pleadings), *appeal docketed* No. 21-2513 (7th Cir. Aug. 17, 2021). Therefore, the Court need not reinvent the wheel. Instead, the Court relies, in large part, on its analyses in both *Paradigm* and *Biltrite*, which justify the Court's finding in the present case that Plaintiff has not stated a claim upon which relief can be granted, as Plaintiff's allegations do not warrant either Business Income or Extra Expense coverage.

Under Illinois law, "tangible property suffers a 'physical' injury when the property is altered in appearance, shape, color, or in other material dimension." *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 496 (Ill. 2001). Moreover, in *Travelers*, the Illinois Supreme Court added that "to the average mind, tangible property does not experience 'physical' injury if that property suffers intangible damage . . . ." *Id.* To be sure, the Illinois

Page 12 of 20
Case 2:20-cv-01428-JPS    Filed 09/03/21    Page 12 of 20    Document 33

Supreme Court was interpreting the term "physical" as a modifier to the term "injury," not "loss" or "damage." However, in *Paradigm*, this Court "f[ound] it likely that, pursuant to the Illinois Supreme Court's interpretation of the terms 'physical injury,'" the plaintiffs in that case had not alleged "physical loss or damage to" their covered premises. 2021 WL 1169565, at *6; *see also Universal Underwriters Ins. Co. v. LKQ Smart Parts, Inc.*, 963 N.E.2d 930, 938–39 (Ill. App. Ct. 2011) (relying on the Illinois Supreme Court's definition of "physical" in *Travelers* to find that the plaintiff's allegations that a car was "discarded and destroyed" "clearly allege[d] 'physical loss or damage' to the vehicle.").

The Court again finds that Plaintiff's allegations of inhabitability and inability to use its property for its intended purpose do not equate to "physical loss of or damage to" property. *See Biltrite*, 2021 WL 3056191, at *5 ("This Court thus follows the many courts that have held that a complaint which only alleges loss of use of the insured property fails to satisfy the requirement for physical damage or loss.") (citation and internal quotations omitted). Moreover, this Court has already deemed that Plaintiff's proposed interpretation "of physical loss of or damage to" to be "extremely tortured." *Paradigm*, 2021 WL 1169565, at *6. And it appears that this Court is in good company, as other courts have rejected similar interpretations. *See Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 694 (N.D. Ill. 2020) (granting the defendant's motion to dismiss after determining, under Illinois law, that the plaintiff, who sought coverage as a result of COVID-19 closure orders, failed to plead a direct physical loss because "the coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property"); *T & E Chicago LLC v. Cincinnati Ins. Co.*, 501 F. Supp. 3d 647, 652 (N.D. Ill. 2020)

("The Court agrees with the courts that have found that loss of use of property without any physical change to that property cannot constitute direct physical loss or damage to the property."); *Zwillo V, Corp. v. Lexington Ins. Co.*, 504 F. Supp. 3d 1034, 1039 (W.D. Mo. 2020) ("The term 'direct physical loss of or damage to property' plainly requires physical loss of or some form of physical damage to the insured property to effect coverage.").

To the extent Plaintiff hinges its argument on its allegations that its loss is physical because COVID-19 itself is physical, (*see* Docket #19 at 2), COVID-19's being physical does not mean that it caused physical loss of or damage to Plaintiff's property. *See Green Beginnings, LLC v. West Bend Ins. Co.*, 20-CV-1661, 2021 WL 2210116, at *5 (E.D. Wis. May 28, 2021) ("[T]he presence of the virus on property does not cause a 'loss' of the use of the property . . . . '[L]oss' means the permanent dispossession of the property––not the temporary loss of use of the property."), *appeal docketed* No. 21-2186 (7th Cir. June 25, 2021).[15] Because Plaintiff fails to allege that it suffered "direct physical loss of or damage to" its Covered Property, pursuant to the ordinary and plain meaning of those terms, Plaintiff has not alleged that it is entitled to coverage under the Business Income and Extra Expense provisions.

### 4.3 Civil Authority Coverage Claim

Next, the Court evaluates whether Plaintiff has sufficiently pleaded a claim for relief under the Civil Authority coverage provision. To trigger such coverage, there must be damage to property other than Plaintiff's

---

[15]In its brief in opposition, Plaintiff claims that "if 'damage' were to be given a structure-altering meaning, 'loss' would have to be given a meaning not carrying that requirement. Otherwise, loss would be rendered redundant and thus violate a cardinal rule of insurance policy interpretation." (Docket #28 at 21). This Court already rejected this line of reasoning in *Biltrite*, 2021 WL 3056191, at *3–*4.

covered premises, caused by a Covered Cause of Loss. As the result of such damage to other property, a civil authority must have taken action to prohibit access to the covered premises because it is within a mile of the damaged property. Further, the civil authority must have acted in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused such damage.

> Plaintiff claims that
>
> COVID-19 caused direct physical loss or damage to property near the Covered Property in the same manner described above that it caused direct physical loss or damage to the Covered Property. The civil authority orders were actions taken in response to the dangerous physical conditions resulting from the direct physical loss or damage to such properties.

(Docket #19 at 23). Plaintiff's claim fails for multiple reasons. First, in Section 4.2, *supra*, the Court determined that Plaintiff has not alleged that it experienced "direct physical loss or damage" to its Covered Property. Therefore, if the damaged propert(ies) near the Covered Property experienced the same "direct physical loss or damage," in truth, those properties have not experienced "direct physical loss or damage." *See Paradigm*, 2021 WL 1169565, at *7.

Plaintiff's allegations do not support (and, in fact, undercut) its claims that the civil authority orders were actions taken in response to direct physical loss or damage caused by COVID-19 within a mile of the Covered Property. Governor Pritzker's executive orders were issued to curb the spread of COVID-19 on a statewide basis. (*See* Docket #19-2, #19-3). Neither executive order suggests that it was issued in response to physical loss or damage to areas immediately surrounding Plaintiff's Covered Property. Moreover, these orders do not bar access to an area

surrounding the property but rather require people to stay at home to stop the spread of COVID-19, with some exceptions. *Biltrite*, 2021 WL 3056191, at *5; *see also Green Beginnings*, 2021 WL 2210116, at *6 (finding that "[the plaintiff] does not plead any facts that allow the court to infer that particular property within the one-mile area immediately surrounding [the plaintiff's property] was damaged," which prompted civil authority action but that "[Governor Pritzker's] executive orders were issued in response to the impact of COVID-19 on the community at large").[16] Thus, Plaintiff has not sufficiently alleged that Defendant improperly denied Civil Authority coverage to Plaintiff.

### 4.4 Communicable Disease Coverage Claim

Next, the Court addresses Plaintiff's argument that Defendant improperly denied Plaintiff's claims for Communicable Disease coverage. To reiterate, such coverage applies to Plaintiff's actual loss of Business Income or Extra Expense *if* a governmental board or board of health shuts down Plaintiff's operations *due to* an outbreak of a "communicable disease" at the premises. (Docket #19-1 at 41) (emphasis added). Plaintiff believes that it has adequately pleaded an outbreak at its premises and, further, that the Communicable Disease provision does not require "a causal relationship between the government-ordered shutdown and an outbreak at the insured premises." (Docket #28 at 36–37).

---

[16]To be sure, the Civil Authority provision requires that the action by a civil authority "prohibit" access to the described premises. (Docket #19-1 at 39). However, because the Court finds that Plaintiff has not sufficiently alleged that it is entitled to Civil Authority coverage on other grounds, it does not wade into the parties' arguments regarding whether Plaintiff was actually prohibited from entering the Covered Property.

Page 16 of 20
Case 2:20-cv-01428-JPS   Filed 09/03/21   Page 16 of 20   Document 33

surrounding the property but rather require people to stay at home to stop the spread of COVID-19, with some exceptions. *Biltrite*, 2021 WL 3056191, at *5; *see also Green Beginnings*, 2021 WL 2210116, at *6 (finding that "[the plaintiff] does not plead any facts that allow the court to infer that particular property within the one-mile area immediately surrounding [the plaintiff's property] was damaged," which prompted civil authority action but that "[Governor Pritzker's] executive orders were issued in response to the impact of COVID-19 on the community at large").[16] Thus, Plaintiff has not sufficiently alleged that Defendant improperly denied Civil Authority coverage to Plaintiff.

### 4.4  Communicable Disease Coverage Claim

Next, the Court addresses Plaintiff's argument that Defendant improperly denied Plaintiff's claims for Communicable Disease coverage. To reiterate, such coverage applies to Plaintiff's actual loss of Business Income or Extra Expense *if* a governmental board or board of health shuts down Plaintiff's operations *due to* an outbreak of a "communicable disease" at the premises. (Docket #19-1 at 41) (emphasis added). Plaintiff believes that it has adequately pleaded an outbreak at its premises and, further, that the Communicable Disease provision does not require "a causal relationship between the government-ordered shutdown and an outbreak at the insured premises." (Docket #28 at 36–37).

---

[16]To be sure, the Civil Authority provision requires that the action by a civil authority "prohibit" access to the described premises. (Docket #19-1 at 39). However, because the Court finds that Plaintiff has not sufficiently alleged that it is entitled to Civil Authority coverage on other grounds, it does not wade into the parties' arguments regarding whether Plaintiff was actually prohibited from entering the Covered Property.

In *Paradigm*, this Court determined that allegations of the mere threat or even presence of COVID-19 do not constitute an outbreak. 2021 WL 1169565, at *9; *see also Green Beginnings*, 2021 WL 2210116, at *6 (finding that the language of the Communicable Disease coverage provision at issue in this case "clearly requires that the plaintiff plead more than just that there was an outbreak in the region generally"). Plaintiff argues that, like in *Baldwin Academy, Inc. v. Market Insurance Co.*, Case No. 3:20-CV-02004-H-AGS, 2020 WL 7488945, at *1 (S.D. Cal. Dec. 21, 2020), Plaintiff has sufficiently alleged an outbreak of COVID-19 on its premises at this stage. (Docket #28 at 36). However, Plaintiff's allegations are markedly different from that of the plaintiff in *Baldwin*. In *Baldwin*, the plaintiff alleged that a parent of a Baldwin Academy student had tested positive for COVID-19 and had repeatedly come to Baldwin Academy, interacting with students and staff in the week prior to her positive test result. *Baldwin*, 2020 WL 7488945, at *4. The district court found that those alleged facts, taken as true, "give[] rise to a plausible inference that an outbreak of COVID-19 occurred at Baldwin." *Id.* In this case, Plaintiff has merely alleged the threat and/or presence of COVID-19 on its property. Such allegations pale in comparison to those in *Baldwin*. Thus, Plaintiff has failed to allege an outbreak on its premises.

Moreover, Plaintiff's argument that Communicable Disease coverage does not require a causal relationship between an outbreak at its premises and the government order is unavailing. This Court has already found that, to be covered under the Communicable Disease provision, the plaintiff must have alleged that Governor Pritzker's executive orders were issued "*due to an outbreak* of COVID-19 at" plaintiff's location. *Paradigm*, 2021 WL 1169565, at *9; *see also Green Beginnings*, 2021 WL 2210116, at *7

("The order shutting down [the plaintiff's] operations must have been due specifically to an outbreak of COVID-19 at [the plaintiff's] premises for there to be coverage under the Communicable Disease provision."). Thus, based on the foregoing, the Court rejects Plaintiff's argument that, under *Baldwin*, "the government order or recommendation could be issued in response to external circumstances, and need not be the direct product of the localized outbreak." 2020 WL 7488945, at *4.

### 4.5 Duties in the Event of Loss or Damage

Finally, Plaintiff claims that it "incurred expenses in connection with reasonable steps to protect Covered Property" and, as such, Defendant should have, but did not, cover Plaintiff under the Duties Section. (Docket #19 at 27). However, in *Paradigm*, this Court held that the exact same Duties Section does not provide coverage but instead imposes a duty on the insured. 2021 WL 1169565, at *9. The Court adheres to its prior holding, as Plaintiff has offered no availing arguments to support its position that this provision is a grant of coverage.

### 4.6 Virus Exclusion

Under Illinois law, "[t]he burden is on the insured to prove that its claim falls within the coverage of an insurance policy. Once the insured has demonstrated coverage, the burden shifts to the insurer to prove that a limitation or exclusion applies." *Sherrod v. Esurance Ins. Servs., Inc.*, 65 N.E.3d 471, 475–76 (Ill. App. Ct. 2016). Thus, because Plaintiff has failed to prove that its claim falls within the coverage of the Form, the Court need not address the parties' arguments as to whether the Virus Exclusion applies.

Page 18 of 20
Case 2:20-cv-01428-JPS    Filed 09/03/21    Page 18 of 20    Document 33

5.  **CONCLUSION**

Based on the foregoing, the Court grants Defendant's motion to dismiss Plaintiff's amended complaint, (Docket #24), and will dismiss this case with prejudice. The Court will deny as moot Defendant's motion to strike class allegations in Plaintiff's amended complaint, (Docket #26). Finally, given this Court's dismissal of both *Paradigm* and this case, as well as its dismissal of the plaintiffs' joint motion to consolidate in *Paradigm*, the Court will deny as moot Plaintiff's motion for joinder in that motion to consolidate, (Docket #16).

Accordingly,

**IT IS ORDERED** that Defendant's motions to dismiss Plaintiff's initial complaint (Docket #10) and to strike Plaintiff's class allegations therein (Docket #13) be and the same are hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendant's motion to dismiss Plaintiff's amended complaint (Docket #24) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant's motion to strike Plaintiff's class allegations in Plaintiff's amended complaint (Docket #26) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for joinder in the joint motion to consolidate in *Paradigm Care & Enrichment Center LLC v. West Bend Mutual Insurance Company* (Docket #16) be and the same is **DENIED as moot**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 3rd day of September, 2021.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge